# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0911-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

QUAMEER L. HENCE,

    Defendant-Appellant.

_____

        Submitted May 13, 2025 – Decided August 8, 2025

        Before Judges Firko and Augostini.

        On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 15-02-0451.

        Jennifer N. Sellitti, Public Defender, attorney for appellant (David A. Gies, Designated Counsel, and Steven M. Gilson, on the briefs).

        Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Maura M. Sullivan, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Quameer Hence appeals from the September 27, 2023 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

We incorporate the facts from our opinion in State v. Hence, No. A-0413-16 (App. Div. Dec. 18, 2018) and summarize only those salient facts necessary to the issue on appeal. On September 15, 2014, while walking alone in Camden, S.L.,[1] a fifty-four-year-old homeless woman, was approached by a black male who questioned her about what she was doing. The man followed her around the corner, punched her in the face, and sexually assaulted her. From a distance, another woman, Elizabeth Holmes, who was a lookout for a drug set, saw an unidentified person on the ground and a male figure dragging that person into a lot. She assumed that two men were fighting.

Approximately thirty minutes later, defendant, whom Holmes had known since defendant was a child, walked up to the porch where Holmes and others were seated. Defendant stated that he was fighting with a man regarding a fake $50 bill, and Holmes saw blood on defendant's sneakers and shirt. Shortly

---

[1] We use initials to protect the confidentiality of the victim(s). R. 1:38-3(c)(12).

thereafter, Holmes learned that S.L. had been injured that night and concluded that defendant had assaulted S.L.

S.L. was taken to the hospital and Francina Pendergrass, the Sexual Assault Nurse Examiner's Coordinator for Camden, conducted a sexual assault examination of S.L. On September 17, 2014, Jose Santiago arrived at the Camden County Prosecutor's office and stated that he had information regarding S.L.'s assault. Santiago relayed his observations and stated that defendant told him that a man owed him money and he was S.L.'s boyfriend and beat her up, causing her to go the hospital. Santiago described the woman as a fifty-four-year-old woman "who he had seen on the flyer that morning."

Seven months later, in April 2015, Santiago returned to the prosecutor's office and explained that he had previously lied to the detectives when he gave his statement on September 17, 2014. He wanted to recant his prior statement because he stated that defendant never said anything to Santiago. Five days before he made his statement on September 17, Santiago was arrested for resisting arrest, but the charges were later dismissed.

Defendant was subsequently convicted by a jury and sentenced for first-degree robbery, N.J.S.A. 2C:15-1; third-degree criminal restraint, as a lesser-included offense of kidnapping, N.J.S.A. 2C:13-2(a); and second-degree

3

aggravated assault, N.J.S.A. 2C:12-1(b)(1). The trial judge granted the State's motion for an extended term of imprisonment, sentencing defendant on the robbery charge to forty-five years in prison, subject to the No Early Release Act N.J.S.A. 2C:43-7.2, and five years on the criminal restraint charge, consecutive to the robbery sentence, plus mandatory fines and penalties. The trial judge merged the second-degree aggravated assault charge with the first-degree robbery charge. On direct appeal, we affirmed defendant's convictions and sentence. State v. Hence, No. A-0413-16 (App. Div. Dec. 18, 2018). Our Supreme Court denied defendant's petition for certification. State v. Hence, 238 N.J. 501 (2019).

On September 27, 2019, defendant filed a petition for PCR. On November 24, 2020, the first PCR judge dismissed defendant's petition without prejudice because defense counsel failed to submit a brief. Approximately two years later, the second PCR judge reinstated defendant's petition.

Before the second PCR judge, defendant claimed ineffective assistance of counsel, contending several alleged errors by trial counsel. However, on appeal, defendant focuses solely on the argument that trial counsel was ineffective by calling Detective Tuwan Smith as a defense witness. Specifically, defendant argues that Detective Smith's testimony "backfired" and "bolstered the State's

case," thereby undermining his defense. Defendant also claims that testimony elicited on direct examination from Detective Smith regarding Nurse Pendergrass' testimony that there was no evidence of a sexual assault based on the sexual assault examine was "superfluous."

After hearing oral argument on September 27, 2023, the second PCR judge denied defendant's petition. The second PCR judge made findings on trial counsel's decision to call Detective Smith. The second PCR judge explained that

> [c]ounsel strategically tried to use Detective Smith's testimony to undermine the credibility of the [S]tate's witnesses, [specifically Santiago and Holmes] by pointing out to the jury that these witnesses did not come forward with information about the crime until a second flyer offering a monetary reward for information on the crimes was distributed.

The second PCR judge explained that this strategy may have "backfired" because Santiago did not collect the reward money, and that this decision was clearly a strategic decision. Nonetheless, trial counsel was able to elicit from Detective Smith that a flyer looking for assistance with the investigation from the public regarding the assault on S.L. was posted in the area, offering a reward for such assistance.

Trial counsel's strategy, as the second PCR judge noted, was to

A-0911-23

undermine the testimony of the state's witnesses, Santiago and Holmes, and their motivation for speaking to the police by showing they did not come forward until a second flyer offering a reward for the perpetrator of the robbery and assault was distributed.

The second PCR judge noted that the issue was not "so much whether or not they took the reward money," but rather, whether it was reasonable trial strategy for trial counsel to call Detective Smith as a defense witness. The second PCR judge concluded that "this trial strategy of calling this detective" fell "within the range of reasonable, professional assistance by trial counsel." Therefore, the second PCR judge denied defendant's PCR petition. This appeal followed.

Defendant presents the following argument for our consideration:

THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING BECAUSE DEFENDANT ESTABLISHED A PRIMA FACIE CASE OF TRIAL COUNSEL'S INEFFECTIVENESS BY HAVING A DEFENSE WITNESS, DETECTIVE TUWAN SMITH, TESTIFY WHO SUBVERTED THE DEFENSE.

In defendant's reply brief, he presents the following arguments:

POINT I

AN EVIDENTIARY HEARING IS NECESSARY SO THE TRIAL ATTORNEY CAN EXPLAIN WHY A PRETRIAL INVESTIGATION WAS NOT NEEDED

6

BEFORE CALLING THE DETECTIVE TO TESTIFY
AS A DEFENSE WITNESS.

POINT II

BY PLACING INTO ISSUE THE MOTIVATION OF
THE STATE'S MATERIAL WITNESS, THE TRIAL
ATTORNEY'S PERFORMANCE PREJUDICED
DEFENDANT WHERE THE WITNESS HE CALLED
TO SUPPORT THE THEORY OF THE CASE
WOULD BE SUBJECT TO AN EFFECTIVE
IMPEACHMENT WHEN HE DID NOT CONDUCT A
PRETRIAL INTERVIEW OF HER.

II.

We review a PCR judge's legal conclusions de novo. State v. Aburoumi, 464 N.J. Super. 326, 338-39 (App. Div. 2020) (citing State v. Jackson, 454 N.J. Super. 284, 291 (App. Div. 2018)). We apply the de novo standard of review in those circumstances when a PCR court does not conduct an evidentiary hearing. State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016) (citing State v. Harris, 181 N.J. 391, 420-21 (2004)). In applying a de novo standard of review, we "view the facts in the light most favorable to [] defendant." State v. Jones, 219 N.J. 298, 311 (2014) (citing State v. Marshall, 148 N.J. 89, 158 (1997)). When petitioning for PCR, a defendant must establish entitlement "to PCR by a

7

preponderance of the evidence." State v. O'Donnell, 435 N.J. Super. 351, 370 (App. Div. 2014) (citing State v. Preciose, 129 N.J. 451, 459 (1992)).

"Those accused in criminal proceedings are guaranteed the right to counsel to assist in their defense" by the Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution. State v. Gideon, 244 N.J. 538, 549 (2021) (citing U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10).

Recognizing this important right to the effective assistance of counsel, bald assertions "to demonstrate counsel's alleged substandard performance" are inadequate to establish a claim of ineffective assistance of counsel (IAC). State v. Porter, 216 N.J. 343, 355 (2013) (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)). Instead, petitioner must allege specific facts "sufficient to demonstrate counsel's alleged substandard performance." Cummings, 321 N.J. Super. at 170.

Moreover, a petitioner is not automatically entitled to an evidentiary hearing on such claims. Ibid. To establish a prima facie case of IAC, a defendant must show a "reasonable likelihood" of success under the two-prong test outlined in Strickland. Preciose, 129 N.J. at 463; see also Strickland v. Washington, 466 U.S. 668, 694 (1984); State v. Fritz, 105 N.J. 42, 58 (1987).

A-0911-23

The Strickland test requires that a defendant show (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment" and (2) counsel's "deficient performance prejudiced the defense." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687). A prima facie claim is established when a defendant satisfies both prongs of the Strickland/Fritz test. See Porter, 216 N.J. at 355 (citing R. 3:22-10(b)).

However, a strong presumption exists that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Strickland, 466 U.S. at 689. "[A] defense attorney's decision concerning which witnesses to call to the stand is an art, and a court's review of such a decision should be 'highly deferential[.]'" State v. Arthur, 184 N.J. 307, 321 (2005) (citation omitted) (quoting Strickland, 466 U.S. at 689) (internal quotation marks omitted).

Defendant contends the second PCR judge erred by not holding an evidentiary hearing to explore whether defense counsel conducted any pretrial investigation to determine what Detective Smith was going to say before deciding to call her to testify. Defendant argues that "[a] trial attorney's strategic decisions made without adequate pretrial investigation are subject to greater

scrutiny," thus, as in this case, an evidentiary hearing is required. See Preciose, 129 N.J. at 462.

Considering these well settled legal principles and based on our de novo review, we conclude defendant failed to overcome the strong presumption counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. Defendant offers no evidence to overcome the presumption that his trial counsel's decision to call Detective Smith as a witness was not a reasoned trial tactic.

Here, as the State points out, the defense challenged the credibility of the State's witnesses, Santiago and Holmes, by establishing that their motivation for speaking with police was to receive the reward money and that they did not come forward until the second flyer[2] offering a reward was put up in the area. During cross-examination, Detective Smith was asked:

> Q:   . . . And when you participated in the interview with Jose Santiago, did he ever ask to collect any reward for the information that he gave you?
>
> A:   No.

---

[2] The record reflects that the Camden police put out an initial informational flyer looking for assistance with S.L.'s assault, but there was no mention of a reward in the first flyer.

Defendant contends that because the record does not disclose any pretrial investigation that would have demonstrated whether Detective Smith's testimony would be helpful in furtherance of the defense strategy, it was ineffective for counsel to call this adverse witness.

Although Detective Smith's testimony may not have gone as counsel had hoped, counsel was able to establish the operative time frame of the posting of the flyer in relationship to Santiago's report to law enforcement. Namely, counsel was able to establish that Santiago contacted law enforcement after the second flyer announcing a reward was posted even though Santiago did not collect the reward money. Additionally, in summation, counsel argued:

> The prosecutor wants you to believe that when Jose Santiago came forward, he wasn't interested in collecting any kind of reward money despite the fact that it's referenced four times in the statement that you heard yesterday and despite the fact that in the very beginning of his statement Detective Wachter uses the same language that's in the reward where it talks about getting money leading to an arrest and conviction.
>
> They also want you to believe that he wasn't motivated to help himself out of his own situation because as you know he had been arrested five days earlier for resisting arrest. What the State wants you to believe is that Jose Santiago came forward because he was outraged over what happened, that he was doing his civic duty to help the police. Do you really believe that? Do you really believe that? Do you really believe that Jose Santiago, a career criminal, was coming

11

A-0911-23

forward because now for the first time in his life he wants to do the right thing?

With respect to the issue of receiving the reward money, defense counsel argued:

> Now, we also know that some of what he talked to the police about was not recorded and the reason why you know that is because I'll go back to the very beginning of his statement, this is where the whole topic came up about getting paid, right, getting paid for something about an arrest and conviction and you've already heard, right, that they want—the prosecutor's position, the State's position is it had nothing to do with this case. Well they want you to believe it had something to do with something else, right, some homicide or murder investigation that he gave information on. But why wasn't that information ever included in any report that Detective Wachter made? Why wasn't that information included in any notes? Isn't that something that you would expect in a case like this?

Even crediting defendant's argument that defense counsel's decision to call Detective Smith was a misguided one, defendant fails to demonstrate that the detective's testimony substantially impacted the outcome of the trial. Based on our de novo review, the record fails to establish that the outcome of the trial would have been different had the detective not been called. Recognizing that "one of the most difficult strategic decisions that any trial attorney must confront" is which witnesses to call, we conclude, as did the second PCR judge, that defendant was not prejudiced by trial counsel's decision to call Detective

12

A-0911-23

Smith as a witness to challenge the State's witnesses' credibility.  See Arthur, 184 N.J. at 320.  As the second PCR judge aptly noted, whether they took the reward money is not dispositive.  Rather, the evidence demonstrated that Santiago was aware of the second flyer which contained information regarding a financial reward at the time he went to law enforcement to give his initial statement.

Moreover, defendant fails to explain how his attorney's decision to call Detective Smith to challenge Santiago's credibility, who testified that he never received the reward money, was likely to have changed the outcome of the trial.  This question is particularly challenging because Santiago testified at trial that he later reported to law enforcement that he lied in his prior statement when he stated that defendant admitted to assaulting S.L.

Defense counsel's decision to call Detective Smith may have been less than effective because it failed to produce the desired outcome.  However, viewing this decision with deference, we conclude the second PCR judge committed no error in denying defendant's PCR petition.  Defendant's claims that his trial counsel was ineffective are not borne out by the record.  Under the two-prong Strickland test, defendant failed to establish that counsel's decision to call Detective Smith "fell outside the wide range of professionally competent

A-0911-23

assistance" of counsel. <u>State v. Allegro</u>, 193 N.J. 352, 366 (2008). Even were this decision "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," there is no evidence that counsel's alleged errors "prejudiced the defense." <u>Fritz</u>, 105 N.J. at 52 (quoting <u>Strickland</u>, 466 U.S. at 687).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0911-23